# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JOSEPH J. ARGENTINE,

      Plaintiff,

v.                            CASE NO: 8:15-cv-957-T-26MAP

BANK OF AMERICA CORPORATION
and FIA CARD SERVICES, N.A.,

      Defendants.

_____/

## O R D E R

Before the Court is Plaintiff's Motion to Remand (Dkt. 14) and Defendants'

Response.  (Dkt. 16).  After careful consideration of the parties' arguments, applicable

law, and the file, the Court concludes the motion should be denied.

### BACKGROUND

Plaintiff's six-count state-court class action complaint sought damages and

injunctive relief, surrounding the allegedly misleading Travel Program of Bank of

America Corporation (BAC) and FIA Card Services, N.A. (FIA), now Bank of America,

N.A. (BANA).  Defendants timely filed a notice of removal pursuant to the Class Action

Fairness Act, 28 U.S.C. § 1332 (CAFA).[1]  Defendants simultaneously filed the

---

[1]  See docket 1.

declaration of a senior vice president with BANA in support of removal.[2]  The complaint was dismissed with leave to amend, save Count VI for injunctive relief.[3]  The amended complaint was filed on June 12, 2015.[4]

## APPLICABLE LAW

To remove a "mass action" pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA), the following requirements must be met: (1) the number of plaintiffs in the proposed plaintiff classes must exceed one hundred; (2) any member of the plaintiff class must be diverse from any defendant; (3) the plaintiffs' claims must involve common questions of law or fact; and (4) the aggregate of claims of the individual class members must exceed $5,000,000.00, exclusive of interest and costs.  Plaintiff concedes that the first three factors have been met, leaving only the amount-in-controversy requirement in dispute.

Unlike other statutes of removal, the CAFA was passed "to facilitate adjudication of certain class actions in federal court."  Dudley v. Eli Lilly & Co., 778 F.3d 909, 912 (11th Cir. 2014) (quoting Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. —, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014 WL 7010692 (Dec. 15, 2014)).  The provisions of the CAFA "should be read broadly, with a strong preference that interstate class actions

---

[2]  See docket 3.

[3]  See docket 15.

[4]  See docket 17.

should be heard in a federal court if properly removed by any defendant." Dudley, 778 F.3d at 912 quoting Senate Report No. 109-14 (2005), which was relied upon in Dart. The allegations of the complaint and all other evidence submitted are considered as they stand at the time of removal.  See Dudley, 778 F.3d at 913.[5]

If the plaintiff has failed to plead a specific amount of damages, the removing defendant bears the burden of proof by a preponderance of the evidence that the amount in controversy "more likely than not" exceeds the jurisdictional requirement.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010) (citations omitted).  Where the plaintiff contests the defendant's calculation of the amount in controversy, the court may not simply accept the defendant's amount, but "must go further."  Dudley, 778 F.3d at 912-13.

If a specific amount of damages is not claimed in the complaint, the court looks to whether the amount is facially apparent from the complaint.  Pretka, 608 F.3d at 754 (quoting Williams v. Best Buy Co., 269 F.3d 1316, 1318 (11th Cir. 2001)).  When the amount is not facially apparent, the court may look to the allegations of the notice of removal.  If the contents of the notice of removal are in dispute, then the court may consider "evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence."  Dudley, 778 F.3d at 913 (quoting

_____

[5]   See also Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) (citing cases to support premise that amount-in-controversy requirement "focuses on how much is in controversy at the time of removal, not later.").

S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014)).  As the

Eleventh Circuit wrote:

> "A removing defendant is not required to prove the amount in
> controversy beyond all doubt or to banish all uncertainty
> about it." Pretka, 608 F.3d at 754.  Moreover, at the
> jurisdictional stage, "the pertinent question is what is in
> controversy in the case, not how much the plaintiffs are
> ultimately likely to recover." Id. at 751 (quotation and
> emphasis omitted).  "The amount in controversy is not proof
> of the amount the plaintiff will recover.  Rather, it is an
> estimate of the amount that will be put at issue in the course
> of the litigation." Id. (quotation omitted).  Dart — which did
> not involve a plaintiff's contest to the defendant's
> jurisdictional allegations — did not disrupt any of this pre-
> existing CAFA case law.

Dudley, 778 F.3d at 913.

## ANALYSIS

At the time of removal, the complaint contained six counts, including a count for

injunctive relief.  The first five counts for damages referenced the loss of the monetary

point value for all reward categories regardless of the type of reward sought.[6]  Plaintiff

defined the class as "those persons who, while residing in the State of Florida, applied for

and obtained a BankAmericard Travel Rewards credit card, accumulated points under the

Travel Rewards Program, and received less than one penny (1¢) per point upon

---

[6]  There are four types of rewards from which the customer may choose, including
travel credit, merchandise and gift certificates, cash back, and a donation to a charity.
This Court explained in a prior order the specific Travel Program contested in this lawsuit
on the basis of misleading and fraudulent advertising as well as other theories.  See
docket 15 (Order on Motion to Dismiss entered June 8, 2015).

redemption."[7]  With respect to the injunctive relief, Plaintiff requested that "Defendants honor their obligation to recognize each point as having a redemptive value of 1¢."[8] Count VI further sought an injunction against Defendants "from redeeming points under the program at less than 1¢."[9]  Thus, Count VI is not limited to cardholders who have already redeemed their points, but extends to cardholders with unredeemed points.

According to the notice of removal and supporting declaration of a senior vice president of BANA, as of December 31, 2014, there were in Florida "in excess of 9,000 cardholders of the BankAmericard Travel Reward Program credit card."[10]  These 9,000 cardholders, while residing in Florida, had obtained the credit card, had accumulated points under the Travel Program, and had received less than one cent per point upon redemption of non-travel rewards.[11]  As of the end of March 2015, there were 146,231 cardholders, either living in Florida or maintaining a Florida mailing address, who held the BankAmericard Travel Program credit card.[12]  Plaintiff alleged in the complaint that his personal damages, which were typical of all class members, equaled $64.00,[13] the

---

[7]  See docket 2, para. 37.

[8]  See docket 2, para. 83.

[9]  See docket 2, wherefore clause following para. 85.

[10]  See docket 3, para. 7.

[11]  See docket 3, para. 7.

[12]  See docket 3, para. 11.

[13]  See docket 2, paras. 32-33.

difference between redemption for a credit of one cent per dollar ($160.00 for 16,000 points) and six-tenths cent per dollar ($96.00 awarded for 16,000 points).  Defendants assert that Plaintiff's allegation that his claim is typical of the claims of each member of the class,[14] together with the injunctive relief as alleged, permits them to extrapolate the $64.00 for the almost 150,000 Florida cardholders for a total that exceeds the $5 million requisite.[15]

The issue is whether this Court must engage in unwarranted speculation in determining the amount in controversy, or, couched in different terms, whether Defendants have provided an evidentiary foundation sufficient from which to draw reasonable inferences and readily deduce[16] "what is in controversy in the case, not how much the plaintiffs will recover."  Pretka, 608 F.3d at 751.  It is clear that the controversy for the claims for damages involves the additional four-tenths of a cent that the Plaintiff was denied, based on his position that one cent for every point was advertised or promised.  Equally as plain is the claim for injunctive relief contained in the original

---

[14]  See docket 2, para. 41 ("The claims advanced by the Plaintiff are typical of the claims of each member of the Class in that Plaintiff is a customer of Defendants and has obtained a Travel Rewards card, accumulated point and redeemed points."

[15]  146,231 cardholders multiplied by $64.00 = $9,358,784.00.  The Court is well aware that 9,000 cardholders multiplied by $64.00 = $576,000.00, which falls short of the $5 million prerequisite for jurisdiction.

[16]  See Dudley, 778 F.3d at 913 (quoting S. Fla. Wellness, 745 F.3d at 1315, that the court may rely on evidence from the defendant including reasonably inferences and deductions drawn therefrom).

complaint seeks to enjoin Defendants from redeeming points at any amount less than one cent per point.  This amount would include the future, not just past, redemptions for all the almost 150,000 cardholders.  Having determined that the amount in controversy encompasses relief to the greater cardholder numbers, the Court must now ascertain whether the absence of knowing the precise number of redemption points in existence for all those cardholders thwarts Defendants' attempt to establish the $5 million amount in controversy.

Based on a review of other cases[17] the Court finds that the amount in controversy advocated by the Defendants in this case, based on the complaint, notice of removal, and other evidence provided at the time of removal, is not too speculative so that reasonable deductions and inferences dictate an accurate estimation of over $5 million dollars.  First, the facts of this case are different from those of the cases that permitted remand.  For example, in Leonard v. Enterprise Rent-a-Car, 279 F.3d 967 (11th Cir. 2002), and Reilly v. Amy's Kitchen, Inc., 2 F.Supp.3d 1300 (S.D. Fla. 2014), the product offered, the sale of car-rental insurance, was not a necessary component of renting a car.  Here, the Travel Program is part of holding the credit card and the cash value would necessarily be increased for the almost 150,000 cardholders should Plaintiff succeed.  As Defendants contend, what would in their opinion amount to a program change in keeping with the

---

[17]   See, e.g., Dudley; Porter v. MetroPCS Commc'ns Inc., 592 F.App'x 780 (11th Cir. 2014); S. Fla. Wellness; Pretka; Leonard v. Enterprise Rent-a-Car, 279 F.3d 967 (11th Cir. 2002); Reilly v. Amy's Kitchen, Inc., 2 F.Supp.3d 1300 (S.D. Fla. 2014).

allegations of the complaint, the "increase" in point redemption value for points already accumulated but not yet redeemed would affect the Travel Program nationwide as well as result in liability in excess of $5 million for the almost 150,000 cardholders as of April 2015.[18]  Consequently, the Court finds that the potential cash value of all of the Travel Reward points redeemed in the past and accumulated in the future but not yet redeemed, places in excess of $5 million at issue.

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand (Dkt. 14) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on June 18, 2015.


s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
Counsel of Record

---

[18]  See docket 3, paras. 8-9.